IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
District Judge S. Kato Crews

Civil Action No. 25-cv-01664-SKC-KAS

GREGORY MAJERSKY,

     Plaintiff,

v.

DOWNTOWN DENVER EXPEDITIONARY SCHOOL, and
BRENT WESTROP,

     Defendants.

---

## ORDER RE: MOTION TO DISMISS (DKT. 22)

---

This case arises from a ban Defendants imposed on Plaintiff during the 2024–25 school year. Plaintiff Gregory Majersky is the father of E.S., who attended Defendant Downtown Denver Expeditionary School ("DDES"), where Defendant Brent Westrop served as principal.[1] Dkt. 6, p. 4. In or around September 2024, Plaintiff emailed Defendant Westrop regarding DDES's operations and activities. *Id*. at p. 4. In response, Defendants DDES and Westrop issued a formal notice banning Plaintiff from all school premises and from attending any school-sponsored activities, including those held in public venues. *Id*.

---

[1] In other court filings, Defendant Westrop is identified as the Executive Director or Director of DDES. *See Defs.' Ex. B* [#22-2] at 2; *Defs. Ex. D* [#22-4] at 2.

Plaintiff alleges that Defendants imposed the ban in retaliation for his exercise of his First Amendment rights, even though he communicated only by email and did not make a true threat. *Id*. Plaintiff further alleges that the ban caused significant harm, including emotional distress and the loss of irreplaceable memories with his daughter during her fifth-grade year. *Id*.

Plaintiff filed this action under 42 U.S.C. § 1983, alleging the ban violated his First Amendment rights. *Id*. at pp. 4-5. Defendants move to dismiss the Complaint in its entirety. Dkt. 22. They seek dismissal on grounds that "Plaintiff has filed at least eight separate state court lawsuits from this one incident," and "[t]hree state courts have already dismissed Plaintiff's claims, finding them barred by *res judicata*, legally insufficient, or both." *Id*. at 5.[2] The Motion is fully briefed, and no hearing is necessary. Having considered the Complaint, the Motion to Dismiss, the related filings, and the controlling law, the Court **GRANTS** Defendants' Motion in part and **DENIES** it in part.

### I. Plaintiff's State Court Actions

Plaintiff previously filed several lawsuits in state court against Defendants. Defendants rely on those prior lawsuits in support of their request for dismissal. Importantly, however, those prior lawsuits concern Plaintiff's speech and Defendants' alleged actions in 2022 and 2023, while Plaintiff's present lawsuit concerns Plaintiff's

_____
[2] Page numbers refer to the numbering stamped at the top of each page by the Court's CM/ECF docketing system, not to the document's original numbering.

protected speech in September 2024, and Defendants' response to that speech, which

barred Plaintiff's attendance at school-sponsored activities during the 2024-25 school

year.

**A.**    ***Majersky v. DDES*, No. 2023CV191, District Court, City & County of Denver (First Action)**

Plaintiff filed a lawsuit against DDES and Westrop alleging that, on March 20,

2023, Westrop, "[as] the Director of Downtown Denver Expeditionary School, expelled

my daughter from the school after care program in retaliation for the ongoing email

dispute over my daughter's assault and the school cover up[.]" Dkt. 22-4, p. 2. Plaintiff

alleged DDES violated his First Amendment rights by retaliating against his

daughter and sought $2 million in punitive damages. *Id*.

Prior to trial, the court dismissed Westrop from the suit. *Id*. at 2.[3] At trial,

DDES presented evidence regarding not only DDES's original ban against Plaintiff's

daughter during the 2022-23 school year but also the later ban prohibiting Plaintiff

from DDES property and activities **for the 2023 to 2024 school year**. *Id*. at p. 4

(emphasis added). After trial, the court issued its findings of fact, conclusions of law,

and judgment on November 26, 2024. *Id*. The court explained that, because it must

construe pro se pleadings liberally, it treated the issue of Plaintiff's ban from DDES

property and activities as tried by consent, even though Plaintiff did not expressly

―――――――――――――――――

[3] Defendants' Exhibit D does not indicate whether Westrop was sued in his individual capacity or his official capacity or both. Given the summary reference to Westrop's dismissal, the Court presumes that Westrop was sued in his individual capacity.

raise that issue in the amended complaint, case management order, or by motion before or during trial. *Id.* at p. 5. The court also noted that both parties addressed Plaintiff's ban in their proposed findings of fact and conclusions of law. *Id.* at p. 5 n.3. Importantly, the court emphasized that its opinion "makes no determinations with respect to the constitutionality of any subsequent actions or bans against Mr. Majersky by DDES, *such as with respect to the 2024 to 2025 school year* as that is outside the scope of this lawsuit." *Id.* at 27-28 (emphasis added).

The court ultimately concluded that DDES violated Plaintiff's First Amendment rights when it imposed the bans against him and his daughter. *Id.* at p. 23-24. The court awarded Plaintiff $1 in nominal damages and denied his requests for compensatory and punitive damages, and injunctive relief. *Id.* at pp. 25-27.

**B.** ***Majersky v. DDES*, No. 2024CV390, District Court, City & County of Denver (Second Action)**

Plaintiff later filed a second action challenging DDES's bans against both him and his daughter for the 2023-24 school year. Dkt. 22-1. In that case, Plaintiff asserted a First Amendment retaliation claim and a Fourteenth Amendment due process claim arising from DDES's decision to ban him from campus and to bar his daughter from certain after-school activities. *Id.* at pp. 2, 4. DDES moved to dismiss the action on several grounds, including res judicata. *Id.* at pp. 2-3.

In granting DDES's motion, the state court explained that "[t]he doctrine of claim preclusion, commonly referred to as res judicata, operates as a bar to a second proceeding on a claim that was fully litigated in a prior proceeding when there is a

4

(1) final judgment; (2) identity of the subject matter; (3) claims for relief; and (4) parties to the action." *Id.* at p. 3 (citing *Argus Real Est., Inc. v. E-470 Pub. Highway Auth.*, 109 P. 3d 604 (Colo. 2005)). The court found that the first, second, and fourth elements were satisfied on the face of the complaint. Plaintiff identified the First Action as having resulted in a final judgment, acknowledged that the second ban appeared as an exhibit in that proceeding, and conceded that both actions involved identical parties. *Id.* at p. 4.

As to the third element, the court noted that the First Action included a First Amendment retaliation claim, while the amended complaint in the Second Action asserted both First and Fourteenth Amendment claims. *Id.* In determining whether the claims were identical, the court explained that the "same claim or cause of action" requirement is defined by the injury for which relief is sought, not by the legal theory on which the claimant relies. *Id.*

Plaintiff argued that the First Action addressed only DDES's initial ban against his daughter for the 2022-23 school year and not the ban against him for the 2023-24 school year. *Id.* The court rejected that argument, explaining that the trial court in the First Action conducted a detailed analysis of both bans and entered judgment on each. *Id.* The court therefore concluded that all four elements of claim preclusion were satisfied and granted DDES's motion to dismiss. *Id.*

**C.**   *Majersky v. Westrop*, **No. 2024CV782, District Court, City & County of Denver (Third Action)**

Plaintiff also filed a lawsuit against Defendant Westrop in response to a criminal complaint Westrop filed accusing Plaintiff of disturbing the peace. Dkt. 22-2. Plaintiff "was subsequently detained and ultimately pleaded guilty." *Id.* at p. 1. In the civil action, Plaintiff asserted a First Amendment claim under 42 U.S.C. § 1983 and a state law claim under Colo. Rev. Stat. § 18-8-708. *Id.* at p. 3. The court noted Plaintiff's prior civil actions against DDES and construed the complaint to allege "that the defendant's criminal complaint against the plaintiff was motivated by, or was in response to, the civil action" between Plaintiff and DDES. *Id.*

The court granted Westrop's motion to dismiss. It held that Plaintiff failed to plausibly allege that he belonged to the universe of individuals protected by the state statute. *Id.* at p. 3. The court also dismissed the § 1983 claim because Plaintiff failed to plausibly allege that Westrop filed the disorderly conduct complaint in his role as DDES's Executive Director rather than "in his capacity as a private citizen." *Id.* at p. 3-4. Finally, the court found the complaint "devoid of any factual allegations establishing that the plaintiff was deprived of any protected constitutional right." *Id.* at p. 4.

**D.**   *Majersky v. Westrop*, **No. 2024CV952, District Court, City & County of Denver (Fourth Action)**

Plaintiff later filed a second civil action arising from Defendant Westrop's criminal complaint. Dkt. 22-3. In that action, Plaintiff asserted four claims: two state

law claims for witness retaliation, a state law claim for witness interference, and a First Amendment claim under 42 U.S.C. § 1983 for retaliation. *Id.* at p. 2.

The court granted Westrop's motion to dismiss and held that res judicata barred Plaintiff's claims. *Id.* at p. 3-4. The court explained that the Third Action involved the same parties, the same claims or claims Plaintiff could have raised, arose from the same subject matter and facts that were presented to the court in the Third Action, and resulted in a final judgment on the merits. *Id.*[4]

## II. Legal Standards

### A.     Federal Rule of Civil Procedure 12(b)(1)

Federal courts, as courts of limited jurisdiction, must have a statutory basis for their jurisdiction. *See Morris v. City of Hobart*, 39 F.3d 1105, 1111 (10th Cir. 1994) (citing *Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)). Under Federal Rule of Civil Procedure 12(b)(1), the court may dismiss a complaint for lack of subject matter jurisdiction. The determination of a court's subject matter jurisdiction is a question of law. *Madsen v. United States ex rel. U.S. Army, Corps of Eng'rs*, 841 F.2d 1011, 1012 (10th Cir. 1987). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974).

---

[4] The Third and Fourth Actions, *Majersky v. Westrop*, Nos. 2024CV782 and 2024CV952, have no bearing on this Court's res judicata analysis because they do not arise from the same events which give rise to Plaintiff's claim in this action.

7

A motion to dismiss for lack of subject matter jurisdiction may take two forms. *See Holt v. United States*, 46 F.3d 1000, 1002 (10th Cir. 1995). It may facially attack a complaint's allegations, or it may challenge the facts upon which subject matter jurisdiction depends. *Id.* at 1002-03. "The burden of establishing subject-matter jurisdiction is on the party asserting jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002) (citing *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994)). "The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction[.]" *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (internal quotation marks and citation omitted).

**B.      Federal Rule of Civil Procedure 12(b)(6)**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P.  12(b)(6). In deciding a motion under Rule 12(b)(6), the court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Casanova v. Ulibarri*, 595 F.3d 1120, 1124-25 (10th Cir. 2010) (internal citations omitted). However, the court must liberally construe the filings of a pro se litigant, such as Mr. Majersky, "so as to do justice," while restraining from constructing a legal theory on a pro se litigant's behalf. FED. R. CIV. P.  8(e); *Haines v. Kerner*, 404 U.S. 519, 521 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court is not "bound to accept as true a legal

conclusion couched as a factual allegation." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* at 678 (internal quotation marks omitted).

### III.   Analysis

Defendants move to dismiss under the *Rooker-Feldman* doctrine, res judicata, issue preclusion, the *Colorado River* abstention doctrine, lack of standing, and failure to state a claim upon which relief can be granted. Dkt. 22.

At the outset, the Court notes an important distinction—one entirely and inexplicably overlooked by defense counsel—between Plaintiff's allegations and the First and Second Actions in state court. The First and Second Actions in state court concerned the ban imposed on Plaintiff for the 2023-24 school year. *See Defs.' Ex. A* [#22-1]; *Ex. D* [#22-4] at 27. But Plaintiff's Amended Complaint expressly and unambiguously complains of Defendants' decision to ban him from the DDES campus and school-sponsored activities for the "20**24**-20**25** school year," because of Plaintiff's protected speech "[i]n or around September 20**24**." *Am. Compl.* [#6] ¶¶ 1, 4; *see also Compl.* [#1] at 4. While Plaintiff unambiguously complains of actions that impacted him during the 2024-25 school year, he references a "formal notice banning [him] from entering all school premises and prohibiting his attendance at all school-

9

sponsored activities[.]" *Id.* ¶ 6. He does not provide any further details about that notice, nor does he attach it to the Amended Complaint [#6]. But his original Complaint [#1], which also complains of retaliation "in September 2024," includes the formal notice as an exhibit. *See Pl.'s Ex. A, Sept. 14, 2023 DPS Letter* [#1-1]. That notice is dated September 14, 20**23**, addresses Plaintiff's conduct during the 2022-23 school year, and bans Plaintiff from the school campus and school activities for the 20**23**-**24** school year. *Id.* at 1-2. Because Plaintiff appears to rely on the September 14, 2023 notice of a 2023-24 school year ban, but his Amended Complaint and original Complaint identify the 2024 retaliation and a 2024-25 school year ban, the Court liberally construes Plaintiff's allegations to include both bans.

### A.    Defendant Westrop

The Complaint does not specify whether Plaintiff sues Defendant Westrop in his individual capacity, official capacity, or both. Dkt. 6. When a complaint fails to identify the capacity in which a government official is sued, courts examine the substance of the pleadings and the course of the proceedings to determine whether the suit seeks individual or official liability. *Pride v. Does*, 997 F.2d 712, 715 (10th Cir. 1993).

Under this "course of proceedings" test, courts consider several factors, including: (1) whether the plaintiff seeks punitive damages, which are unavailable in official-capacity suits; (2) whether the defendants assert qualified immunity; (3) whether the complaint pleads claims against the individual defendants separately

from claims against their employing agencies; and (4) whether the case remains in its early stages, such that amendment of the complaint may still be appropriate. *Norris v. Buena Vista Corr. Complex*, No. 12-cv-00924-DME-KMT, 2013 WL 674030, at \*3 (D. Colo. Feb. 25, 2013); *see also Washington v. Oklahoma City*, No. CIV-20-266-D, 2021 WL 11745595, at \*3 (W.D. Okla. Mar. 17, 2021) (reasoning that claims asserted against an individual defendant in a prior state court action were official capacity claims because the claims "were related to his employment" as school district superintendent).

Plaintiff seeks compensatory and punitive damages only, indicating an individual capacity claim, but does not plead a claim against Defendant Westrop separate from his claim against DDES. Dkt. 6 at pp. 4-5. The case remains at an early stage, and Defendants have not yet filed an Answer asserting affirmative defenses such as qualified immunity; however, Defendant Westrop did not raise qualified immunity in the Motion to Dismiss [#22]. Given this posture, the Court construes the Complaint as asserting claims against Defendant Westrop in both his individual and official capacities.

**B.    The *Rooker-Feldman* Doctrine and Res Judicata**

Defendants first argue the Court should dismiss Plaintiff's claim under the *Rooker-Feldman* doctrine and res judicata, or claim preclusion. Dkt. 22 at pp. 9-13. Because Plaintiff prevailed in the state proceedings and does not seek this Court's review of the state-court judgment, the Court concludes that claim preclusion, not

*Rooker-Feldman*, governs this action, to the extent that Plaintiff's claim concerns the September 14, 2023 notice of the ban for the 2023-24 school year.

The *Rooker-Feldman* doctrine and res judicata are distinct concepts. The former bars a losing state-court party from bringing a federal action that seeks review and rejection of a state-court judgment. *Miller v. Deutsche Bank Nat'l Tr. Co. (In re Miller),* 666 F.3d 1255, 1261 (10th Cir. 2012). The latter refers to claim preclusion. *See Allen v. McCurry*, 449 U.S. 90, 94 n.5 (1980). Because state law governs the preclusive effect of state-court judgments in federal court, federal courts must give those judgments the same preclusive effect they would receive in state court. *In re Miller*, 666 F.3d at 1261; *Vanover v. Cook*, 260 F.3d 1182, 1187 (10th Cir. 2001).

Under Colorado law, claim preclusion bars a party from litigating claims that a court previously resolved or that the party could have raised in the earlier action. *Argus Real Est.*, 109 P. 3d at 608. It applies when: (1) a final judgment exists; (2) the subject matter is identical; (3) the claims for relief are identical; and (4) the parties are identical or in privity. *Id*. All four elements are satisfied here regarding Plaintiff's claim against Defendants DDES and Westrop, in his official capacity.

First, the state court entered a final judgment. Dkt. 22-4. Second, the subject matter and claims are identical. Although Plaintiff argues the earlier case addressed only a 2022-23 school year ban affecting his daughter, *see Response* [#27] at 3, the state court expressly addressed the later 2023-24 school year ban imposed against Plaintiff. *Id*. at p. 2. A subsequent state court likewise recognized that in the previous

12

case, the trial court "completed a detailed, thorough analysis of both the March 2023 and September 2023 bans and entered judgment as to both bans." Dkt. 22-1, p. 4.

Third, the party-identity requirement is satisfied. Although the state court dismissed Westrop from the First Action, the claim asserted against him was related to his employment as "Director of Downtown Denver Expeditionary School." Dkt. 22-4, p. 2. Therefore, that claim was against Westrop in his official capacity. *See Washington*, 2021 WL 11745595, at *3. Additionally, because Defendant Westrop served as DDES's Director, he stands in privity with DDES in his official capacity. *See Gonzales v. Hernandez*, 175 F.3d 1202, 1206 (10th Cir. 1999) (explaining government employees are in privity with their employer in their official capacities, but not in their individual capacities) (citing 18 CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE & PROCEDURE § 4458 at 506 & n.8, 508-09 & n.12 (1981 & Supp. 1999) (citing cases) (other citations omitted)); *Daniels v. Leibowitz*, No. GJH-16-2645, 2017 WL 1273936, at *7 (D. Md. Feb. 3, 2017) (finding privity between an organization and its executive director for res judicata purposes). Finally, the Court must also give preclusive effect to the state court's determination in Plaintiff's second lawsuit that claim preclusion bars further First Amendment claims based on Defendants' 2023-24 school year ban against Plaintiff. Dkt. 22-1, pp. 3-4

For these reasons, the Court concludes that claim preclusion bars Plaintiff's claim against Defendants DDES and Westrop in his official capacity to the extent it

concerns the 2023-24 school year ban. Claim preclusion does not bar Plaintiff's claim against Defendant Westrop in his individual capacity, however. This is because Defendant Westrop's personal interests, which are at stake because of the individual capacity claim, differ from the interests of DDES and Westrop in his official capacity. *See Washington*, 2021 WL 11745595, at *4 ("defendants in their individual capacities are not in privity with their employers or other defendants in their official capacities") (collecting Tenth Circuit and District of Kansas decisions). Additionally, claim preclusion does not bar Plaintiff's claim against Defendants DDES and Westrop (in either capacity) to the extent it concerns a 2024-25 school year ban.

## C.    Issue Preclusion

Defendants next seek dismissal based on issue preclusion, which is also referred to as collateral estoppel. Dkt. 22, pp. 12-13. *See Allen*, 449 U.S. at 94 n.5. Unlike claim preclusion, issue preclusion bars parties from relitigating discrete issues rather than entire causes of action. *Foster v. Plock*, 394 P. 3d 1119, 1123 (Colo. 2017). Once a court finally resolves an issue in one proceeding, the doctrine prevents the parties from raising that same issue in a later proceeding, even if the claims differ. *Id*. Issue preclusion applies when: (1) the prior proceeding resulted in a final judgment on the merits; (2) the current proceeding raises the same issue actually adjudicated in the prior proceeding; (3) the party against whom preclusion is asserted had a full and fair opportunity to litigate the issue; and (4) that party participated in the prior proceeding or acted in privity with a party who did. *Id*. The fourth element

14

requires "identity or privity between parties to the actions." *Id*. at 1126 (quoting *Cruz v. Benine*, 984 P. 2d 1173, 1176 (Colo. 1999)).

That requirement is not satisfied here. Defendant Westrop, in his individual capacity, was not an individual-capacity defendant in the First Action regarding the 2023-24 school year ban. Government employees stand in privity with their employer when sued in their official capacities, but not when sued in their individual capacities. *Gonzales*, 175 F.3d at 1206. Additionally, neither the First Action nor the Second Action concerned the 2024-25 school year ban. Accordingly, Defendant Westrop may not invoke issue preclusion as a defense in his individual capacity with respect to the 2023-24 school year ban. And neither DDES nor Defendant Westrop (individual or official capacity) may invoke issue preclusion as a defense with respect to the 2024-25 school year ban.

**D.    *Colorado River* Doctrine**

Defendants next seek dismissal under the *Colorado River* abstention doctrine. Dkt. 22, pp. 13-14. The doctrine permits federal courts to "dismiss or stay a federal action in deference to pending parallel state court proceedings" when the federal court would otherwise exercise concurrent jurisdiction with the state court. *Tetra Tech Inc. v. Town of Lyons*, 641 F. Supp. 3d 1042, 1056 (D. Colo. 2022) (quoting *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976)).

Defendants identify four lawsuits that Plaintiff filed in state court, though only two relate to the school ban at issue. Regardless, the materials submitted with the

Motion to Dismiss show that the state courts have resolved each of those cases; Defendants present nothing to indicate that appeals are pending. Because no parallel state proceeding remains pending, the *Colorado River* abstention doctrine does not apply.

**E.    Standing & Mootness**

Defendants challenge Plaintiff's standing to bring this lawsuit, arguing that "[m]oney damages for past injuries do not create standing when the underlying conduct has ceased." Dkt. 22, p. 14. Defendants raise a similar argument as to mootness, asserting that Plaintiff's claim is moot because the school year during which the ban applied has ended. *Id.* at pp. 14-15.

These arguments misapprehend the nature of Plaintiff's claims. Plaintiff seeks only compensatory and punitive damages. Dkt. 6, p. 5. Standing and mootness arguments based on the absence of ongoing harm typically arise when a plaintiff seeks injunctive or declaratory relief, not when a plaintiff seeks damages for past conduct. The case law Defendant cites confirms this distinction. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 109 (1998) ("Past exposure to illegal conduct does not in itself show a present case or controversy *regarding injunctive relief* . . . if unaccompanied by any continuing, present adverse effects.") (emphasis added and citation omitted); *see also Brown v. Buhman*, 822 F.3d 1151, 1169 (10th Cir. 2016) ("Voluntary cessation cannot moot an action seeking damages because damages compensate a party for past conduct, not ongoing or future conduct.").

16

Because Plaintiff seeks only damages for past conduct, Defendants' standing and mootness arguments are without merit. The Court therefore denies Defendants' request for dismissal on these grounds.

## F.    Failure to State a Claim

Concerningly, Defendants' failure-to-state-a-claim arguments rest on fundamental misunderstandings of the law. Defendants argue that Plaintiff fails to plausibly allege a First Amendment retaliation claim. Dkt. 22, pp. 15-17. To state such a claim, a plaintiff must allege "(1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct." *Pryor v. Sch. Dist. No. 1*, 99 F.4th 1243, 1250 n.2 (10th Cir. 2024).

Defendants contend that Plaintiff's emails do not constitute protected speech because they included personal attacks on administrators. Dkt. 22, p. 15. A state court has already determined the emails qualify as protected speech, which undermines Defendants' argument.[5] In any event, the emails themselves are not before the Court or attached to the Amended Complaint [#6]; rather, on a motion to

_____

[5] For reasons the Court cannot comprehend, on two occasions Defendants rely on a decision by Denver District Judge Martin F. Egelhoff; however, that decision in Denver District Case No. 24cv782 did not concern any of the school year bans and provides no support for their argument. *See* [#22-2].

17

dismiss, the Court considers the well-pleaded allegations. Plaintiff alleges that his emails addressed "the operations and activities of DDES" and that Defendant Westrop responded by banning him from "entering all school premises and prohibit[ing] his attendance at all school-sponsored activities" for the 2024-25 school year. Dkt. 6, p. 4. These allegations plausibly state a retaliation claim.

Defendants also argue that Westrop imposed the ban as DDES's Executive Director rather than in his individual capacity. Dkt. 22, p. 17. That argument fails. Plaintiff seeks damages from Defendant Westrop for actions taken under color of state law, and plaintiffs may pursue such claims against government officials in their individual capacities. *See Hafer v. Melo*, 502 U.S. 21, 31 (1991) (holding that plaintiffs may seek monetary damages from governmental officers in their individual capacity regardless of the "'official' nature of their acts").

Defendants further assert that Plaintiff's claim fails because Colorado charter schools may make independent decisions regarding operations, discipline, and property access without implicating state action. Dkt. 22, pp. 16-17 (citing Colo. Rev. Stat. § 22-30.5-104). The statute allows charter schools to operate freely from certain school district policies and state rules, but it does not clearly support Defendants' proposition. Moreover, although neither Colorado courts nor the Tenth Circuit have definitively resolved whether Colorado charter schools qualify as state actors, recent authority suggests they may. *See Doe through Doe v. Rocky Mountain Classical Acad.*, 99 F.4th 1256, 1259 n.2 (10th Cir. 2024) (accepting without deciding that a public

18

charter school qualifies as a state actor). Additionally, a state court found that DDES is a municipality under the laws of the State of Colorado. Dkt. 22-2, p. 2. At this stage, Defendants have not shown that DDES falls outside the scope of state action for purposes of § 1983.

Finally, Defendants argue that Plaintiff lacks standing to enforce criminal statutes and that the Amended Complaint violates Federal Rules of Civil Procedure 8 and 10. Dkt. 22, pp. 17-18. Plaintiff asserts no claims under criminal statutes, and the Amended Complaint complies with Rules 8 and 10. Dkt. 6, pp. 4-5.

## G.    Dismissal Based on Litigation Abuse

Finally, Defendants ask the Court to dismiss Plaintiff's lawsuit under Federal Rule of Civil Procedure 11. Rule 11(b) prohibits parties from filing pleadings for "any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation." Defendants assert that Plaintiff has filed eight lawsuits in state and federal courts, that courts have dismissed three of those cases, including two on res judicata grounds, and that four additional cases remain pending. Dkt. 22, p. 18. According to Defendants, all actions arise from their bans against Plaintiff and his daughter and demonstrate serial forum shopping, claim splitting, disregard of adverse rulings, and harassment. *Id.* at p. 19.

The record does not support Defendants' characterizations. Defendants provide evidence of four state court lawsuits. Dkt. 22-1, 22-2, 22-3, 22-4. As discussed above, two of those lawsuits do not arise from the DDES bans but instead stem from

19

a criminal disturbing-the-peace charge against Plaintiff. Dkt. 22-2, 22-3. Moreover, although Plaintiff has filed nine lawsuits in this Court, this case alone arises from the school ban. Plaintiff files lawsuits frequently and rarely succeeds, but the present record does not justify dismissal of this case under Rule 11.

## IV. Conclusion

For the reasons articulated above, the Court **DENIES in part** and **GRANTS in part** Defendants' Motion to Dismiss (Dkt. 22).

Consistent with the foregoing analysis, Plaintiff's claim regarding the 2023-24 school year ban against Defendants DDES and Westrop, in his official capacity, is **dismissed with prejudice** based on res judicata, or claim preclusion.

Plaintiff's claim regarding the 2023-24 school year ban against Defendant Westrop, in his individual capacity, may proceed to discovery.

Plaintiff's claim regarding the 2024-25 school year ban against Defendants DDES and Westrop, in his individual and official capacities, may proceed to discovery.

Dated: March 16, 2026

BY THE COURT:

S. Kato Crews
United States District Judge

20